IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JERMAINE IRBY, | § § § | |
| Plaintiff | § § | Civil No. 1:21-cv-01008 |
| -v- | § § | |
| CHRISTINE WORMUTH, SECRETARY OF THE DEPARTMENT OF THE ARMY | § § § § § | |
| Defendant. | § § | |

PLAINTIFF JERMAINE IRBY'S ORIGINAL COMPLAINT AND JURY DEMAND

I.
PARTIES

1.  Plaintiff Jermaine Irby is an individual who resides in Lampasas County, Texas.

2.  Defendant, Christine Wormuth is the Secretary of the Department of the Army and the proper defendant for employment discrimination and retaliation claims against the Department of the Army. Service on Defendant under Rule 4(i) can be effectuated via receipt of a copy of the summons and complaint by the Chief of the Litigation Division, who is authorized to accept service under 32 C.F.R. 516.14 on behalf of the Secretary of the Army. Service can be completed on the United States as required by Rule 4.

II.
JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this complaint under 28 U.S.C. § 1331, which provides federal courts with jurisdiction over cases involving federal statutes. This action is being brought under 29 C.F.R. 1614.407; 42 U.S.C. § 2000e et seq. Under 29 C.F.R. § 1614.407, "[a] complainant who has filed an individual complaint . . . is authorized under title VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court." Under 42 U.S.C. § 2000e-16(c), a federal employee of a military department "may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

4. Venue is appropriate because the acts giving rise to this lawsuit occurred within Bell County, Texas in the Western District of Texas.

III.
FACTS

5. In March 2013, Mr. Jermaine Irby started working for the Sexual Harassment Assault Response Program, also known as SHARP, at Fort Hood.

6. His first position was as a victim advocate directly facilitating the advocacy process for victims.

7. In November 2014, Mr. Irby became an instructor/trainer for SHARP. As an instructor/trainer, Mr. Irby mainly conducted 80-hour SHARP courses to train

individuals on how to become SHARP victim advocates and sexual assault response coordinators.

8. From February 2015 until August 2016, LTC Jeffrey Gorres was the III Corps SHARP Program Manager and Mr. Irby's direct supervisor.

9. On August 27, 2015, Mr. Irby filed an EEO complaint against Mr. Gorres for gender discrimination. This complaint arose from an incident on June 10, 2015. On June 10, 2015, Mr. Irby got into a heated discussion with SFC Terrea Evans Jones, a female colleague. When SFC Evans Jones became verbally hostile towards Mr. Irby, Mr. Irby left the office and went to his truck. SFC Evans Jones followed Mr. Irby to his truck, opened his door and grabbed his arm. Mr. Irby reported it to LTC Gorres, but nothing was ever done about it.

10. On August 25, 2015, LTC Gorres called Mr. Irby "sheepish."

11. Based on the failure of LTC Gorres to address SFC Evans Jones' behavior and LTC Gorres treating Mr. Irby less favorably than his female colleagues, Mr. Irby filed an EEO complaint against LTC Gorres alleging sex discrimination.

12. That complaint was resolved on September 3, 2015 through a negotiated settlement agreement with LTC Gorres. As part of the settlement LTC Gorres was required to undergo additional training for communication issues.

13. LTC Gorres never forgot this complaint Mr. Irby made against him.

14. Even after LTC Gorres transferred out of SHARP in August 2016, LTC Gorres would look for ways to retaliate against Mr. Irby.

15. One way LTC Gorres retaliated was to insert himself into issues involving Mr. Irby in order to harm Mr. Irby's career.

16. One such example occurred in the summer of 2018.

17. On June 27, 2018, SFC Moyer and SFC Cupit were arguing about the standard operating procedures for SHARP. SFC Cupit attempted to draw Mr. Irby into the argument. When Mr. Irby said something that SFC Cupit disagreed with, she started yelling at him. Mr. Irby reported this behavior to the SHARP supervisor COL Quincy Norman that day.

18. Five days later, SFC Cupit filed a sexual harassment complaint against Mr. Irby. She also alleged that Mr. Irby had created a hostile environment on May 21-25. The hostile environment allegation gave rise to a parallel investigation.

19. Mr. Irby was then suspended from his SHARP duties pending investigation on July 10, 2018. On July 16, 2018, a memo was sent to headquarters, detailing his suspension but was not provided to Mr. Irby until January 2019.

20. On July 16, 2018, Mr. Irby's D-SAACP credentials were also suspended pending the outcome of the investigation into SFC Cupit's complaint. These credentials are required to work for SHARP. There are no exceptions.

21. Mr. Irby was also put under a no-contact order that required him to be at least 1,000 feet away from SFC Cupit.

22. On July 17, 2018, Mr. Gorres, who had retired from the military, provided a statement to the Investigating officer appointed by the battalion commander regarding Ms. Cupit's sexual harassment complaint. This statement was odd

for several reasons. First, Mr. Gorres had not supervised Mr. Irby for almost two years. It is exceedingly odd for a supervisor from two years earlier who had no knowledge of the subject matter of the complaint to provide a statement. Second, in his statement, Mr. Gorres specifically referenced Mr. Irby's 2015 EEO complaint and repeatedly said that Mr. Irby created a hostile environment. Third, Mr. Gorres stated that Rex Thomas, the Fort Hood EEO Manager, "warned" Mr. Gorres about Mr. Irby. The entire statement shows that Mr. Gorres had not forgotten about Mr. Irby's complaint and still harbored resentment towards Mr. Irby about it.

23. In August 2018, Mr. Gorres became the SHARP program manager again. At that time, he also became Mr. Irby's direct supervisor even though he had animus towards Mr. Irby for his prior EEO complaint.

24. SFC Cupit was informed of the results of the investigation on August 16, 2018 and appealed it. This appeal would last until December 2018.

25. On August 20, 2018, Mr. Irby was informed that the sexual harassment complaint had been unfounded, but that two more claims of bullying and hostile environment had been added to the investigation.

26. Mr. Irby had never been told of these additional claims and no details were provided, including the fact that Mr. Irby was being investigated by the Inspector General.

27. On September 21, 2018, the investigation into Mr. Irby's June 27, 2018 report to COL Norman about SFC Cupit found that her "behavior in the workplace

and actions toward Mr. Irby were unprofessional and disrespectful." The recommendation of relief was for SFC Cupit to be counseled for behavior unbecoming. SFC Cupit's D-SAACP credentials were not affected by the investigation's conclusion that she had acted in an unprofessional and disrespectful manner.

28. In November 2018, SFC Cupit's appeal of her complaint was being reviewed by III Corps SJA Labor Law review.

29. On December 4, SFC Cupit's appeal investigation was completed. The recommendation was for Mr. Irby to be counseled by Mr. Gorres.

30. III Corps Command wanted full reinstatement for Mr. Irby.

31. Mr. Irby was not informed of the result until December 22, 2018 and was not able to return to the work until January 3, 2019.

32. On January 3, 2019, Ms. Chasity Needd, whom Mr. Gorres had tasked with determining what kind of counseling to give Mr. Irby, decided that Mr. Irby should be given a three-year letter of reprimand.

33. On February 14, 2019, Mr. Irby received a letter of reprimand for "creating a disturbance in the workplace and discourteous behavior." The reprimand contained many false statements.

34. The final step to full reinstatement for Mr. Irby was to have his D-SAACP credentials reinstated. To do that, SHARP Command submitted a packet to the National Organization for Victim Assistance, a third-party organization that grants, reinstates, and renews D-SAACP credentials.

35. Mr. Gorres facilitated sending in that packet on January 22, 2019.

36. The reinstatement request was presented to the D-SAACP Review Committee on February 26, 2019.

37. As part of reviewing the request, the D-SAACP Review Committee held a telephone Conference with Mr. Gorres regarding the unsubstantiated sexual harassment allegations against Mr. Irby.

38. Based on the conversation Mr. Gorres had with the D-SAACP Review Committee, reinstatement of Mr. Irby's credentials was denied.

39. Based on the email from Lindsy Gundrum, the D-SAACP Director, Mr. Gorres told the Review Committee that "there was a collateral investigation that resulted in a reprimand for conduct unbecoming, creating a hostile environment, and insubordination." Significantly, not one of those things was in the letter of reprimand Mr. Irby received from Mr. Gorres on February 14, 2019. However, Mr. Gorres did use similar language in describing Mr. Irby to the 15-6 investigating officer in July 2018 before bringing up Mr. Irby's EEO complaint that resulted in Mr. Gorres receiving additional training for communication issues. Moreover, the alleged dates of the incidents that created a hostile environment were May 21-25, 2018. However, Mr. Irby was not in the country on those dates, let alone in the office.

40. Mr. Gorres' inaccurate description of the results of the investigation into Mr. Irby was retaliation for Mr. Irby's prior EEO complaint.

41. Since Mr. Irby was not granted D-SAACP credentials he had to be removed as a SHARP trainer.

42. Mr. Irby currently works as a training coordinator. It is quite different than a SHARP trainer. His current job consists of coordinating meetings, responding to requests for information producing slides for meetings, and transitioning slides during meetings. Unlike as SHARP trainer, in his current position, Mr. Irby does not influence instruction on organizational behaviors or positively influence others by providing tools for critically thinking through complex social situations. The job is much less prestigious and desirable than that of a SHARP trainer.

43. Mr. Irby first contacted the EEO about Mr. Gorres' retaliatory behavior on February 6, 2019. Counseling was extended to March 5, 2019. He filed a formal complaint on April 12, 2019, which was accepted for investigation by Rex Thomas on April 17, 2019.

44. The investigation and the ROI was completed and issued on August 30, 2019.

45. Mr. Irby requested an EEO hearing on his claims in September 2019. Since the Army has not issued a final decision within 180 days of the complaint, Mr. Irby has the right to file suit.

46. All conditions precedent to the filing of this suit have been met.

IV.
CAUSE OF ACTION: TITLE VII RETALIATION

47. Plaintiff incorporates all of the above paragraphs as if restated herein.

48. Plaintiff engaged in protected activity when he filed an EEO complaint against then-LTC Gorres in 2015.

49. Plaintiff suffered an adverse action when he received a three-year letter of reprimand from Mr. Gorres in February 2019.

50. Plaintiff suffered an adverse action when his D-SAACP credential were not reinstated due to Mr. Gorres' conversation with the D-SAACP Review Committee where he made materially false and/or misleading statements.

51. As demonstrated in the facts stated in the prior section, there is a causal connection between Mr. Irby's protected activity, his letter of reprimand, and denial of his D-SAACP credentials.

52. Defendant's actions caused Plaintiff to suffer damages.

## V.
## JURY DEMAND

53. Plaintiff demands trial by jury and will tender the appropriate fee.

## VI.
## DAMAGES

54. Plaintiff seeks all damages allowed under the law, including monetary relief and:

    (a) Plaintiff seeks an injunction prohibiting Defendant from engaging in unlawful practices as well as an injunction directing the Army to issue a formal letter of apology for Mr. Irby's treatment, and an injunction reinstating his D-SAACP credentials.

(b) Plaintiff seeks additional equitable relief as may be appropriate such as promotion, back pay, front pay, reinstatement of sick leave, and court costs.

(c) Plaintiff seeks compensatory damages for past and future nonpecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, reputational and other nonpecuniary losses.

(d) Plaintiff seeks reasonable attorney's fees and costs including reasonable expert fees.

(e) Plaintiff seeks pre and post judgment interest at the maximum rate allowed by law.

WHEREFORE, premises considered, Plaintiff respectfully prays that Defendant be cited to appear and, that upon a trial on the merits, that all relief requested be awarded to Plaintiff, and for such other and further relief to which Plaintiff is justly entitled.

Respectfully submitted,
WILEY WALSH, P.C.

By: ___/s/ Colin Walsh___
Colin Walsh
Texas Bar No. 24079538
*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*

WILEY WALSH, P.C.
1011 San Jacinto Blvd., ste 401
Austin, TX 78701

Telephone: (512) 27-5527
Facsimile:  (512) 201-1263
colin@wileywalsh.com
ATTORNEYS FOR PLAINTIFF