**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **JERMAINE IRBY,** *Plaintiff,* | § | |
| | § | **W-21-CV-01143-ADA-DTG** |
| *v.* | § | |
| | § | |
| **SECRETARY CHRISTINE WORMUTH, SECRETARY OF THE DEPARTMENT OF THE ARMY;** *Defendant.* | § | |

**REPORT AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ALAN D ALBRIGHT,**
**UNITED STATES DISTRICT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court is Defendant's Motion for Summary Judgment. ECF No. 39. Plaintiff opposes the motion. ECF No. 41. Defendants filed a reply in support of their motion. ECF No. 46. Oral arguments were heard on May 3, 2023. ECF No. 52. After careful consideration of the briefs, arguments of counsel, and the applicable law, the Court **RECOMMENDS** that Defendant's Motion be **GRANTED**.

## I. FACTUAL BACKGROUND

This case arises out of a Title VII retaliation claim by Plaintiff Jermaine Irby against Defendant Christine Wormuth. Irby was employed as a Sexual Harassment Assault Program (SHARP) trainer at Fort Hood. See ECF No. 1 ¶ 1. On June 10, 2015, Irby engaged in a heated discussion with Jones, a female colleague, which ended with Jones following Irby to his vehicle

and grabbing his arm. *Id*. ¶ 9. Irby reported the incident to his supervisor, Jeffrey Gorres, but found Gorres' response unsatisfactory and, as a result, filed an EEO complaint against Gorres alleging sex discrimination. *Id*. ¶¶ 9–11. The parties negotiated a settlement agreement on September 3, 2015. *Id*. ¶ 12. Irby alleges that, as a result of the EEO complaint, Gorres looked for ways to retaliate against him, seeking to damage his reputation and career. *Id*. ¶¶ 14–15.

An incident in 2018 with another co-worker, Cupitt, and the subsequent investigation caused Irby to be suspended from his SHARP duties, have his D-SAACP credentials—a requirement for employment by SHARP—suspended, and receive a three-year letter of reprimand. *Id*. ¶¶ 17–20. Cupitt filed the complaint against Irby for sexual harassment and creating a hostile work environment. *Id*. ¶¶ 17–18. The investigator determined by a preponderance of the evidence that Irby: (1) disrespected his coworkers, (2) caused/contributed to a hostile work environment, and (3) acted insubordinate to previous SHARP Resource Center leaders. ECF No. 39-6 at 29. Moreover, the investigator recommended administrative action be taken. *Id*. As advised by Fort Hood's Human Resources Specialist, Gorres issued the letter of reprimand. EFC No. 39-1 at 4.

Following the investigation, the Army petitioned for reinstatement of Irby's D-SAACP certificate, but eventually revoked his credentials pursuant to their ethics policies. ECF No. 39-2 at 2; EFC No. 39-15 at 2. D-SAACP credentials are issued, and reinstated, by the National Organization for Victim Assistance ("NOVA"), a third-party organization independent of the Department of Defense. ECF No. 39-2 at 3. NOVA denied Irby's reinstatement, citing the results of the 2018 investigation—findings of "conduct unbecoming, creating a hostile work environment, and insubordination" which instigated the reprimand—as the reason. ECF No. 39-14 at 2.

The investigation's findings also established, pursuant to DODI 6495.03 (2017), that Irby violated the Army's Sexual Assault Prevention Response (SAPR) Professional Code which

constitutes cause for revoking D-SAACP credentials. ECF No. 39-2 at 2. Based on that violation, the Army revoked Irby's certificate, which should have happened in place of the petition for reinstatement. EFC No. 39-15 at 2; EFC No. 39-2 at 2. Without a D-SAACP certificate, Irby could no longer work as a SHARP trainer, so the Army detailed him to the III Corps G3 section which had the same pay, benefits, title, series, and grade. EFC No. 39-16 at 2.

## II. LEGAL STANDARD

The summary judgement standard is well known. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014). All facts and evidence are viewed in the light most favorable to the nonmovant. *Vargas v. McHugh*, 630 F.App'x. 213, 215 (5th Cir. 2015).

The Court analyzes claims of retaliation that are based on circumstantial evidence under the *McDonnell Douglas* burden shifting framework. *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir. 2007); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). First, the plaintiff must establish a *prima facie* case. *McCoy*, 492 F.3d at 556. If a plaintiff establishes a *prima facie* case, the defendant then bears the burden of production (not persuasion or proof) to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id*. at 557. If the defendant meets this burden of production, the plaintiff then carries the burden of proving that the proffered reason is pretext for the retaliatory purpose. *Id*.

## III. DISCUSSION

The Army argues that: (1) Irby cannot make a *prima facie* showing of retaliation; and (2) even if he does, he cannot show that the Army's proffered reason for the employment action is pretextual. ECF No. 39 at 11. Irby claims showing the elements of a *prima facie* case of retaliation

is unnecessary at this point, but he will do so out of an abundance of caution. ECF No. 41 at 2. Irby further claims that there is substantial evidence of pretext. *Id*. at 11.

**A. Prima Facie Case—Retaliation**

To establish a prima facie case of retaliation, a plaintiff must show: (1) he engaged in a Title VII protected activity; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse action. *McCoy*, 429 F.3d at 556–57. The Army challenges Irby's ability to meet the second and third elements. ECF No. 39 at 11, 15.

***1. Adverse Employment Action***

The Army claims Irby cannot show that he suffered any adverse employment action with respect to his Title VII protected activity—filing the EEO complaint against Gorres in 2015. ECF No. 39 at 11. Irby contends that he suffered adverse action when he received the three-year letter of reprimand. ECF No. 1 ¶ 49. Irby further argues that Gorres' comments to the D-SAACP committee and the transfer to a job with different duties constitute adverse actions. ECF No. 41 at 3–4. The Army asserts that Irby failed to plead these theories in the complaint, but even if he had, Irby's arguments lack support. ECF No. 39 at 12 n.1; ECF No. 46 at 3 n.1; ECF No. 46 at 4.

The letter of reprimand does not constitute an adverse employment action. To establish an adverse action, a plaintiff must show the challenged action was *materially* adverse, meaning it would have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In some circumstances—namely where there are consequences as a result—a reprimand may serve as an adverse employment action. *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 F.App'x 280, 286 (5th Cir. 2014). However, letters of reprimand issued in response to work-rule violations have been held to be non-adverse. *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 587 (S.D. Tex.

2015). Further, where a plaintiff suffers no direct consequences from the reprimand, no adverse action has occurred. *Hernandez v. Sikorsky Support Servs., Inc.*, 495 F.App'x. 435, 438 (5th Cir. 2012). Colonel Norman's revocation of Irby's D-SAACP certification effectuated the job transfer, affecting his job title and duties, not the letter of reprimand. ECF No. 39-15 at 2. Moreover, the letter of reprimand was in response to his violation of the SARP Professional Code and did not dissuade Irby from making a charge of discrimination, as he filed an EEO complaint against Gorres two months after receiving the letter. EFC No. 39-2 at 2; ECF No. 39-19 at 2.

Gorres' comments to the D-SAACP committee and the unwanted job transfer also fail to meet the threshold of adverse actions. First, where an employer's statements toward a plaintiff might have dissuaded a reasonable employee from making a retaliation charge (e.g., an EEO claim), the challenged action may be materially adverse. *Fallon v. Potter*, 277 F.App'x 422, 428–29 (5th Cir. 2008). However, Irby was not privy to, or aware of, the statements Gorres made to the D-SAACP Committee at the time, nor does he know what those comments were. EFC No. 41-1 at 126. Thus, Gorres' statements could not have dissuaded Irby from making a retaliation charge. Furthermore, as stated above, the loss of his credentials and eventual job transfer was a result of the Army's revocation, not the information relayed in the phone conference. ECF No. 39-15 at 2.

Second, a transfer may be an adverse employment act where a plaintiff provides evidence objectively showing that "he has suffered some serious, objective, and tangible harm as a result of his transfer." *Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001). Merely showing that the transfer was "from a job he likes," such as one he believes to be more prestigious, "to one that he considers less desirable" is insufficient. *Id.*; *see also Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (noting that subjective perception of a demotion is insufficient to establish an adverse action). Currently, Irby coordinates training briefings, assists with semiannual training

briefings for the commanding generals, manages the military personnel exchange program, runs operation tempo milage, and completes special projects. ECF No. 41-1 at 14:6–16. As a SHARP trainer, Irby facilitated classroom operations, coordinated with the SHARP academy, conducted briefings to general officers, and participated in the monthly sexual assault board. ECF No. 41-1 at 29: 2, 16–18; 32: 4–7. Though different, this change in duties caused no objective, tangible harm to Irby, and he suffered no decrease in pay, title, grade or benefits. EFC No. 39-16 at 2.

***2. Causal Link***

The Army also claims that Irby has failed to show a causal link between the protected activity and the alleged adverse actions. ECF No. 39 at 15. Irby argues that temporal proximity between the 2015 EEO complaint and the alleged adverse actions in 2018 creates a causal link. ECF No. 41 at 10. Irby also asserts that Gorres' knowledge of the 2015 EEO complaint was not wholly unrelated to the alleged adverse actions—creating an inference of a causal link——and argues cat's paw causation applies to NOVA's decision not to reinstate his credentials. ECF No. 41 at 9, 14.

An inference of a causal link despite the lengthy period between the EEO complaint and the alleged adverse employment actions is not appropriate. Correctly, Irby asserts that the "causal link standard" does not require "but-for" causation, only a "causal connection," at the *prima facie* stage. ECF No. 41 at 7; *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). A causal link may be established temporally—by a showing of "close enough" timing—between protected activity and adverse employment action. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1001 (5th Cir. 2022). Courts have found mere months insufficient to meet the close timing standard. *See Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (noting "a five-month lapse is not close enough without other evidence of

retaliation"); *see Vargas*, 630 F.App'x. at 217 (establishing that a fifteen-month period, standing alone, was insufficient to infer a causal link). Four years passed between Irby's protected action (the EEO complaint) and the alleged adverse employment actions (the reprimand, comments, and transfer), thus Irby cannot establish a causal link on temporal proximity alone. However, a causal link may be shown despite a significant time gap where there is other evidence of retaliation, including an employment record contrary to the employer's action or departure from the employer's typical policies and procedures. *Vargas*, 630 F.App'x. at 217. The Army followed its typical policies by issuing the reprimand and revoking Irby's D-SAACP credentials in response to the investigation's findings, only deviating—in Irby's favor—in attempting to have the credentials reinstated contrary to DODI 6495.03 (2017). ECF No. 39-1 at 4–5; ECF No. 39-2 at 2–3.

Furthermore, Irby's theory of cat's paw causation, with regard to NOVA's decision to not reinstate his credentials, also fails. NOVA is an independent third party, not an agent "possess[ing] supervisory authority delegated" by the Army—the entity Irby "seeks to hold liable." ECF No. 39-2 at 3; *Staub*, 562 U.S. at 422. Moreover, Gorres' statements to the D-SAACP committee regarding the investigation do not lend to a finding of cat's paw causation because (1) Diane Osborne, the SHARP program analyst, relayed news of Irby's suspension to NOVA before the phone conference, and (2) Gorres only provided information regarding the investigation after being asked by the D-SAACP committee. ECF No. 39-2 at 2; ECF No. 39-1 at 5.

**B. Pretext**

The Army asserts that, even assuming Irby makes a *prima facie* showing of retaliation, he cannot rebut the Army's legitimate, non-retaliatory reason for the adverse actions. ECF No. 39 at 20. Irby argues the evidence raises an inference of pretext because (1) the reprimand and Gorres' statements to the D-SAACP committee were intended to result in the denial of reinstatement, (2)

he was treated differently than others engaging in similar behavior, (3) Gorres has retaliated against others for filing complaints, and (4) the findings of the investigation were unsubstantiated. ECF No. 41 at 11–17.

Once a defendant satisfies the burden of producing a non-retaliatory reason for the alleged adverse action, the plaintiff must persuade the court that the reason is actually pretext for retaliation. *Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F.App'x 328, 336 (5th Cir. 2014). To establish pretext and avoid summary judgment, a plaintiff must show substantial evidentiary conflict on whether the protected activity was a "but for" cause of the alleged adverse action. *Id.*; *Feist*, 730 F.3d at 454. First, Irby raises a question of authority to issue the reprimand, but fails to show retaliation motivated the action. Irby alleges Gorres failed to follow procedure in issuing the letter of reprimand, as that is a job for the appointing officer, and went out of his way to notify NOVA of the results of the investigation to block the reinstatement of Irby's credentials. ECF No. 41 at 12–13. Generally, failure to follow internal procedures remains insufficient to raise an inference of pretext. *Grubb v. Sw. Airlines*, 296 F.App'x 383, 390 (5th Cir. 2008). Gorres was Irby's supervisor and believed, justifiably, it was his responsibility to follow the recommendation of the investigating officer. EFC No. 39-1 at 4. Moreover, Gorres notifying NOVA of the investigation's results does not support an inference of pretext because he only relayed the information when requested by the committee. ECF No. 39-1 at 5. Second, Irby fails to raise an issue of fact regarding the alleged disparate treatment. To establish pretext on this ground, a plaintiff must show the comparator was treated differently where the adverse action was taken in "nearly identical circumstances." *Garcia*, 938 F.3d at 244. The plaintiff and comparator may be similarly situated when they hold the same job/responsibilities, share a supervisor, and have their employment status determined by the same person. *Id.* Irby primarily relies on an investigation

that found Cupitt had engaged in unprofessional conduct. EFC No. 41 at 15. However, Cupitt no longer worked at the SHARP center when Gorres returned in August 2018. ECF No. 41-4 at 146: 7–9. As he was not her supervisor, he was not responsible for responding to the findings of Cupitt's investigation. ECF No. 39-1 at 5–6. Third, Irby's claims that previous alleged retaliatory conduct raises an inference of pretext lack support. Irby relies on *Sprint/United Management Co. v. Mendelsohn*; however, *Mendelsohn*'s holding and discussion involve evidence of similarly situated individuals in age-discrimination cases, not evidence that may raise an issue of pretext in a retaliation case. ECF 41 at 15; 552 U.S. 379, 386–88 (2008). Last, Irby's reliance on witness statements and an appointing officers' comments about the 2018 investigation raises an issue regarding the investigation's validity, rather than the retaliatory motive for the alleged adverse actions. Though other circuits have found co-workers' assessments of a plaintiff's work may raise an inference of pretext, *see Abuan v. Level 3 Comms., Inc.*, 353 F.3d 1158, 1174 (10th Cir. 2003), disputing the facts underlying an employer's decision and arguing the decision was wrong does not raise a material issue of fact regarding pretext. *See LeMaire v. La. Dep't of Transp. and Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Ultimately, the evidence does not support an inference of retaliation. Irby has failed to point to any evidence demonstrating that Gorres would not have issued the letter of reprimand "but for" the 2015 EEO complaint Irby brought against him. *Hague*, 560 F.App'x at 336. Furthermore, even assuming the comments made by Gorres to the D-SAACP committee and the job transfer were pleaded as adverse actions, these were direct consequences of the investigation of Cupitt's complaint against Irby. ECF No. 39-2 at 1–2; ECF No. 39-15 at 2. The findings of unprofessional conduct and insubordination constituted a violation of the ethics code, prompting the Army's

revocation of his credentials and necessitating the transfer. ECF No. 39-15 at 2; ECF No. 39-2 ¶ 20. Therefore, Irby's 2015 EEO complaint was not a "but for" cause of these events.

## IV. RECOMMENDATION

For the above reasons, it is the **RECOMMENDATION** of the United States Magistrate Judge to the United States District Judge that Defendant's Motion for Summary Judgment be **GRANTED**.

## V. OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

SIGNED this 31st day of July, 2023.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE